IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00093-FDW-DCK

| | |
|---|---|
| AMY R. BRYAN,<br><br>**Plaintiff,**<br><br>v.<br><br>ALLIED INTERSTATE LLC,<br><br>**Defendant.** | **ORDER** |

THIS MATTER is before the Court on Defendant's Motion for Judgment on the Pleadings. (Doc. No. 10). The Motion has been fully briefed by both parties and is ripe for review. For the reasons stated herein, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for Judgment on the Pleadings. (Doc. No. 10).

I. **BACKGROUND**

Plaintiff Amy Bryan ("Plaintiff") filed this lawsuit against Defendant Allied Interstate, LLC ("Defendant") on February 23, 2020, alleging Defendant violated the federal Fair Debt Collections Practices Act ("FDCPA"). (Doc. No. 1). The Complaint alleges Defendant called Plaintiff on December 16, 2019 to collect on an alleged debt from Plaintiff. Id. Plaintiff asserts Defendant "blocked its telephone number so that [the call] appeared as 'Unknown' on Plaintiff's cell caller ID." Id. at p. 3. Defendant allegedly left a voicemail on Plaintiff's cell phone and explained that it was trying to collect on an alleged debt. Id. Plaintiff contends that, because the message was marked as being from "Unknown," she had no way of knowing the identity of the caller, and she played the voicemail near her sister and mother, both of whom overheard the message, which "caused [Plaintiff] significant embarrassment and humiliation." Id. Plaintiff

1

accordingly filed the instant lawsuit, alleging Defendant is liable for violating the FDCPA. Specifically, Plaintiff asserts the following: (1) Defendant "engaged in deceptive and misleading means in connection with the collection of the alleged [d]ebt" in violation of 15 U.S.C. § 1692e; (2) Defendant failed to meaningfully disclose its identity when it attempted to collect the alleged debt in violation of 15 U.S.C. § 1692d(6); and (3), Defendant improperly communicated with Plaintiff's mother and sister regarding the alleged debt in violation of 15 U.S.C. § 1692c(b). Id. at pp. 4-5.

In response to the lawsuit, Defendant timely filed an Answer (Doc. No. 6) and the instant Motion for Judgment on the Pleadings, which has been fully briefed by the parties. (Doc. Nos. 10, 15, 16). During the pendency of the litigation, the parties filed separate Suggestions of Bankruptcy on September 15, 2020, notifying the Court that Defendant filed a voluntary petition for Chapter 11 Bankruptcy in the Southern District of Texas. (Doc. Nos. 18, 19). This Court issued an Order staying the case pursuant to 11 U.S.C. § 362 on October 13, 2020. (Doc. No. 20). On December 7, 2020, Defendant notified this Court that the bankruptcy proceedings were complete, and the automatic stay was lifted. (Doc. No. 21). Because the stay has been lifted, the Court herein rules on the pending Motion for Judgment on the Pleadings.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A 12(c) motion is reviewed under a standard similar to that which is used in Rule 12(b)(6), with the "key difference being that on a 12(c) motion, the Court is to consider the answer as well as the complaint." Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) (internal citations omitted). "In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to

2

the nonmoving party." Sports Med Properties, LLC v. Talib, No. 3:19-cv-00082-FDW-DSC, 2019 WL 3403372, at *2 (W.D.N.C. July 26, 2019). "Therefore, a motion for judgment on the pleadings 'should only be granted if . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). A court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarranto v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations omitted).

### III. ANALYSIS

Defendant moves for Judgment on the Pleadings for all of Plaintiff's claims because "Plaintiff has failed to allege facts sufficient to state a claim against [Defendant]." (Doc. No. 10-1, p. 5). The Court will address each of Defendant's arguments and Plaintiff's claims below.

#### a. 15 U.S.C. § 1692e

15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute describes various kinds of conduct prohibited by the section, including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." § 1692e(10). Plaintiff alleges Defendant violated § 1692e, and § 1692e(10) specifically, when Defendant blocked its number so it appeared as "Unknown" on Plaintiff's caller ID. (Doc. No. 1, pp. 3-4). Defendant argues that, even if it had intentionally blocked its number, doing so is not a violation of the statute.[1]

---

[1] Because we construe the allegations in the light most favorable to Plaintiff, the Court assumes for purposes of this Order that Defendant intentionally blocked its number when it called Plaintiff's cell phone in connection with an alleged debt.

The Fourth Circuit has not yet had the occasion to determine whether the complained-of conduct here—a debt collector intentionally blocking its number when contacting a consumer about an alleged debt—violates 15 U.S.C. § 1692e. However, the Fourth Circuit has established that debt collector conduct is to be evaluated under the "least sophisticated consumer" standard. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996). The least sophisticated consumer standard requires a court to "consider how a 'naïve' consumer would interpret the [conduct]," assuming a "'quotient of reasonableness.'" Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015) (quoting Nat'l Fin. Servs., Inc., 98 F.3d at 136)).

Defendant argues Plaintiff has failed to state a claim under § 1692e because the "Complaint does not allege that [Defendant] used false information or deceptive information in the course of debt collection." (Doc. No. 10-1, p. 16). However, this is precisely what Plaintiff alleges. Plaintiff alleges Defendant intentionally blocked its telephone number "for the purpose of masking its true identity" in hopes "that Plaintiff would be more likely to answer her phone than if she thought a debt collector was calling." (Doc. No. 1, p. 3). It is plausible that an unsophisticated consumer acting with a quotient of reasonableness would find the act of intentionally causing a number to appear as "Unknown" to be false, misleading, or deceptive. Accordingly, Plaintiff has stated a claim under 15 U.S.C. § 1692e and § 1692e(10) and the Court DENIES Defendant's Motion with respect to Count I of the Complaint.

  **b. 15 U.S.C. § 1692d(6)**

15 U.S.C. § 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. One such restriction on conduct requires debt collectors to "meaningfully diclos[e] . . . the caller's identity" when communicating with a consumer in connection with an alleged debt. § 1692d(6). Plaintiff alleges Defendant violated the meaningful disclosure provision when it

4

blocked its number so that it appeared as "Unknown" on Plaintiff's caller ID.[2] (Doc. No. 1, p. 4). Defendant asserts it meaningfully disclosed its identity on the voicemail, notwithstanding the blocked number. (Doc. No. 10-1, p. 12).

Exactly what constitutes meaningful disclosure has not yet been addressed by the Fourth Circuit, but the Court finds Hart v. Credit Control, LLC, 871 F.3d 1255 (11th Cir. 2017) instructive. In Hart, the Court evaluated whether a voicemail left by a debt collection company complied with the meaningful disclosure requirement of § 1692d(6) when the voicemail did not disclose the specific caller's identity. Id. at 1256. In answering this question, the Eleventh Circuit held "meaningful disclosure is provided as long as the caller reveals the nature of the debt collection company's business, which can be satisfied by disclosing that the call is on behalf of a debt collection company, and the name of the debt collection company." Id. at 1260. Here, the Complaint makes clear Defendant's voicemail "announced the call was from a debt collector," and identified Defendant (Allied) as the debt collector. (Doc. No. 1, p. 3). Defendant's voicemail provided more than enough information for Plaintiff to "protect herself under the FDCPA." Hart, 871, F.3d at 1259. Thus, Defendant clearly provided meaningful disclosure in the content of its voicemail.

However, the question of whether calling from a blocked number violates the meaningful disclosure requirement remains. Meaningful disclosure requires a debt collector to reveal the nature of the debt collector's business and the name of the debt collection company. As Defendant

---

[2] In her Opposition Motion, Plaintiff makes clear that her claim under § 1692d(6) is premised not on the "alleged content" of the voicemail but rather, on "Defendant's affirmative concealment of its telephone number." (Doc. No. 15, p. 13). For purposes of this Order, the Court assumes the act of placing an unanswered phone call under an unknown number is a "communication" within the FDCPA; however, as a matter of law, it is unclear whether an unanswered phone call from a number appearing as "unknown" on caller ID implies the existence of a debt such that it is a "communication" subject to regulation under the FDCPA. See Litt v. Portfolio Recovery Assocs. LLC, 146 F.Supp. 3d 857, 870-71 (E.D. Mich. 2015) (collecting cases where courts evaluated whether an unanswered phone call was a communication for purposes of the FDCPA).

5

points out in its briefing, it is difficult to see how a debt collector could convey this information via the caller ID feature alone. See Glover v. Client Servs., Inc., No. 1:07-cv-81, 2007 WL 2902209, at *7 (W.D. Mich. Oct. 2, 2007) (dismissing § 1692d(6) claim and stating "it is not entirely clear that a debt collector could satisfy the meaningful disclosure requirement through use of a caller ID device."); see also Cliche v. Receivables Performance Mgmt., LLC, No. 3:10-cv-00019, 2010 WL 11646952, at *6-*7 (N.D. Ga. Nov. 3, 2010) (recommending dismissal of the § 1692d claim and explaining "from the allegation [p]laintiff provides, it appears that he believes a violation can occur even without a conversation at all, merely by calling from a blocked or private number."), *report and recommendation adopted by* Cliche v. Receivables Performance Mgmt., LLC, No. 3:10-cv-19, 2011 WL 13318721 (N.D. Ga. Jan. 13, 2011). Indeed, Plaintiff seems to suggest that anything less than "Allied Interstate, LLC – Debt Collector" appearing on the caller ID screen would violate the meaningful disclosure requirement.

Moreover, the primary purpose of § 1692d is to protect consumers "*only* from oppressive and outrageous conduct." See, e.g., Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 394 (D. Del. 1991) (emphasis added); Kranz v. Midland Credit Mgmt., Inc., No. SA-18-cv-00169, 2020 WL 4905806, at *8 (W.D. Tex Aug. 20, 2020); Vullings v. Arcadia Recovery Bureau, LLC, No. 17-4361, 2018 WL 3609085, at *5 (E.D. Pa. July 27, 2018). As part of § 1692d, the meaningful disclosure requirement is thus clearly intended to protect against harassing, oppressive, or abusive conduct, and Plaintiff has simply not alleged any such harassing, oppressive, or abusive conduct by Defendant. It seems a stretch to conclude *one* phone call from a number marked as "Unknown" is the type of conduct § 1692d is intended to prevent.

Notably, in her Opposition Motion Plaintiff makes no attempt to distinguish either Glover or Cliche, and she fails to cite any law in support of her contention that a debt collector must meaningfully disclose via the caller ID function *before* any actual communication occurs. Rather,

6

she asks this Court to update the statute in such a way that "keeps pace" with changing technology—a task that is more appropriately undertaken by Congress, not the judiciary. (Doc. No. 15, p. 14).

Accordingly, because the Complaint does not allege that Defendant failed to meaningfully disclose its identity, the Court GRANTS Defendant's Motion with respect to Count II of Plaintiff's Complaint.

### c. 15 U.S.C. § 1692c(b)

15 U.S.C. § 1692c(b) prohibits debt collectors from communicating with "any person other than the consumer" in connection with an alleged debt held by the consumer. Plaintiff alleges Defendant violated this section when it left a voicemail on Plaintiff's cell phone that Plaintiff listened to in the presence of her mother and sister, both of whom overheard the message as it played. (Doc. No. 1, pp. 3, 5). Defendant argues the Complaint does not state a claim under § 1692c(b) because the allegations amount to the "voluntary dissemination of information to third parties." (Doc. No. 10-1, p. 6).

As with the claims discussed above, there is no binding case law to inform this Court's answer to the question of whether a debt collector is liable under the FDCPA for a communication to a consumer *overheard* by a third-party. Defendant cites to two cases in its Motion, Fontell v. Hassett, 870 F. Supp. 2d 395 (D. Md. 2012), and Peak v. Prof'l Credit Serv., No. 6:14-cv-01856-AA, 2015 WL 7862774 (D. Or. Dec. 2, 2015) to support its argument.

In Fontell, the District of Maryland found no liability under § 1692c(b) when the consumer *subsequently* played a voicemail from a debt collector for a friend, *after* learning the contents of the voicemail. Fontell, 870 F. Supp. 2d at 404. The Fontell facts are easily distinguishable from the case at bar. Here, the Complaint makes clear that Plaintiff's mother and sister *overheard* the voicemail when Plaintiff listened to it for the first time. (Doc. No. 1, p. 3). Plaintiff did not listen

7

to the voicemail and subsequently share it with her mother and sister; rather, Plaintiff alleges she listened to the voicemail, and her mother and sister overheard the contents of the voicemail while Plaintiff was listening to it. Fontell is accordingly not persuasive to this Court.

In Peak, the District of Oregon granted summary judgment in favor a debt collector when a voicemail left on the plaintiff's cell phone was overheard by a colleague when the plaintiff listened to the message in an employee break room at work. Peak, 2015 WL 7862774, at *6. The court reasoned that "a communication is 'with' a third party under 15 U.S.C. § 1692c(b) if it was reasonably foreseeable the third party would receive the communication," and held it is not reasonably foreseeable that a third party would receive a communication directed at a personal cell phone. Id. at *5-*6. Although the Court agrees with Plaintiff that Peak improperly applied a negligence standard to the FDCPA, the Court is nonetheless persuaded by the "cell phone/landline distinction" articulated by the Peak court:

> The cell phone/land line distinction is important because a caller may reasonably assume messages left on a cell phone's voicemail system will not be accidentally overheard, as they must be accessed through the cell phone itself. By contrast, if any person is in the vicinity of a land line answering machine, that person may overhear a message as it is being left.

Id. at *6.

The cell phone/land line distinction was implicitly expounded upon in a more recent case from the District of New Jersey, Nelson v. Receivables Outsourcing, LLC, No. 17-11543, 2018 WL 3854796 (D.N.J. Aug. 14, 2018). In Nelson, the plaintiff sued a debt collector for various alleged violations of the FDCPA, including § 1692c(b). Id. at *1. Specifically, the plaintiff alleged the debt collector left voicemail messages on his cell phone, some of which were translated automatically to a text format that could be easily seen by third parties. Id. The court explained that the Third Circuit has "generally declined to impose liability where a communication is

directed specifically at the debtor" and dismissed the plaintiff's § 1692c(b) claim because "[p]laintiff controls his own cell phone, and has not pleaded that [d]efendant (or anyone else) controls it instead. Id. at *3-*4. The court explained:

> Whether *overheard* or textualized, the voice mails on [plaintiff's] phone are within his control. Defendant did not communicate with a third party; it communicated with [p]laintiff, whose phone—an instrumentality in his possession, as implicitly acknowledged by the pleadings—was used to convey the message to other people. As such, [p]laintiff fails to allege that [d]efendant communicated with a third party, and his claim . . . is dismissed.

Id. at *4 (emphasis added).

Here, the Complaint alleges Plaintiff's mother and sister overheard the message left by Defendant on Plaintiff's personal cell phone. Like the plaintiff in Nelson, Plaintiff here has not alleged any third party controlled her cell phone or that her phone was not an instrumentality in her sole possession and control when the message was overheard. The allegations indicate that Defendant did not communicate with Plaintiff's mother and sister—Defendant communicated with Plaintiff, whose phone conveyed the message to Plaintiff's mother and sister because of Plaintiff's decision to listen to the voice mail in mixed company.

Moreover, the only cases cited by Plaintiff in her Opposition Motion can be easily distinguished by using the cell phone/land line distinction. The cases cited by Plaintiff indicate a potential for liability under § 1692c(b) when the debt collector left a voice message on a *landline* connected to a non-exclusive answering machine. See, e.g., Marisco v. NCO Fin. Sys., Inc., 946 F. Supp. 2d 287, 294-95 (E.D.N.C. 2013) (explaining that "leaving a message on an answering machine is 'inherently risky' because it is well known that, *unlike a voicemail message*, a message left on an answering machine can be easily heard within a certain distance" (emphasis added)); see also Strouse v. Enhanced Recovery Co. LLC, 956 F. Supp. 2d 627, 634 (E.D. Pa. 2013) ("[D]ebt collectors violate § 1692c(b) by harassing unobligated family members and by leaving messages

9

on answering machines that children and parents could hear." (citation omitted)); FTC v. Check Enforcement, No. Civ. A. 03-2115, 2005 WL 1677480, at *8 (D.N.J. July 18, 2005). Here, there are simply no facts alleging Defendant engaged in the inherently risky behavior of leaving a voice message on a phone that could be easily accessed by persons other than Plaintiff.

The Court also finds the facts alleged here to be sufficiently analogous to myriad other cases finding no violation of § 1692c(b) when the debt collector properly addressed mail—which is private and personal much in the same way a cell phone is private and personal—to a consumer, only for that mail to be inadvertently sent to, or opened by, a third party. See, e.g., Davis v. Phelan Hallinan & Diamond PC, 687 F. App'x 140, 144-45 (3d Cir. 2017) ("[A] letter addressed specifically to the debtor does not communicate with a third party, even if it is mailed to the address of a third party. That is because a letter in an envelope addressed only to the debtor does not convey information 'to any person' other than the debtor."); Green v. Brock & Scott, PLLC, No. 3:19-cv-075, 2020 WL 5633060, at *4 (W.D.N.C. Sept. 21, 2020) (dismissing § 1692c(b) claim when debt collector correctly mailed correspondence to plaintiff even though a third party with the same name mistakenly opened plaintiff's mail); Duran v. Midland Credit Mgmt., No. 15-cv-5940, 2016 WL 3661538, at *3 (S.D.N.Y June 30, 2016) (dismissing § 1692c(b) claim because "[i]t would be unreasonable to construe 'communicate with' so broadly as to encompass the accidental transmittal of information to an eavesdropper or interceptor"). Here, Defendant conveyed information directly to Plaintiff by contacting her via her personal cell phone. A phone call placed to a personal cell phone cannot be said to convey information to any person other than the consumer who owns the cell phone.

Simply put, leaving a message on a private, personal cell phone cannot be construed as a communication with a person other than the consumer who owns the phone; to hold otherwise would be to impermissibly expand the scope of the FDCPA and its intended purposes. Indeed, the

FDCPA is intended to protect against practices that are truly offensive, such as "the use of obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002). The facts alleged here do not paint a picture of the type of truly offensive conduct the FDCPA was intended to protect against. Accordingly, the Court GRANTS Defendant's Motion with respect to Count III of Plaintiff's Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Judgment on the Pleadings. (Doc. No. 10). Counts II and III of Plaintiff's Complaint are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Signed: January 14, 2021

Frank D. Whitney
United States District Judge